UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALFRED T. BLAND,

   Plaintiff,

v.

Case No.:
HON.

ISABELLA COUNTY, ISABELLA COUNTY
SHERIFF'S DEPARTMENT, ISABELLA COUNTY
DEPUTY SHERIFF KEVIN E. DUSH, ISABELLA
COUNTY DEPUTY SHERIFF SGT. JAMES HADLEY,
and CITY OF MT. PLEASANT POLICE OFFICER
SARA CUTHBERTSON,

Jointly and Severally as Defendants.

_____/

## COMPLAINT FOR DAMAGES AND JURY DEMAND

**NOW COMES** the Plaintiff, Alfred T. Bland, by and through his attorneys, CONVERTINO & ASSOCIATES, and hereby states the following claims against defendants Isabella County Sheriff's Department; Isabella County Deputy Sheriff Kevin E. Dush, individually and in his individual capacity; Isabella County Deputy Sheriff Sgt. James Hadley, individually and in his individual capacity, and City of Mount Pleasant Police officer Sara Cuthbertson, individually and in her individual capacity; jointly and severally as follows:

### JURISDICTION

1. This is a civil action:

   a. Arising under the Constitution and laws of the United States and this Court has original federal jurisdiction pursuant to 28 U.S.C. §1331; and

   b. To redress the deprivation, under the color of law, of the rights, privileges and immunities of plaintiffs secured by the Constitution of the United States providing for equal rights of its

citizens and of all persons of any jurisdiction in the United States, and this Court has original jurisdiction pursuant to 28 U.S.C. §1343(3).

2. The principal events giving rise to the claims stated herein occurred in this district and venue is therefore proper in this district pursuant to 28 U.S.C. §1367(a).

## THE PARTIES

3. Plaintiff, Alfred T. Bland, is an individual who resides in Mt. Pleasant, Michigan.

4. Defendant Isabella County is a body politic doing business through its employees and agents in various forms, including the Isabella County Sheriff's Department, is a Michigan municipal corporation existing in Isabella County and is organized under the laws of the State of Michigan.

5. Defendant Isabella County Sheriff's Department is an agency or department of Isabella County, and includes the patrol and jail divisions.

6. Defendant Kevin E. Dush ("Dush") is a deputy sheriff and employee of the Isabella County Sheriff's Department and is being sued in his individual capacity.

7. Defendant James Hadley ("Hadley") is a deputy sheriff and employee of the Isabella County Sheriff's Department and is being sued in his individual capacity.

8. Defendant Sara Cuthbertson ("Cuthbertson") is a Police Officer and employee of the City of Mt. Pleasant, and is being sued in her individual capacity.

9. The cause of action arose in the City of Mt. Pleasant.

10. The amount in controversy exceeds $75,000.00.

## GENERAL ALLEGATIONS

11. The Plaintiff, Alfred T. Bland, ("Mr. Bland"), is a resident of Mt. Pleasant, Michigan, and was a resident at all times relevant to this complaint.

12. Mr. Bland is 83 years old and is a retired Sergeant with the Michigan Department of State Police (MSP).  Mr. Bland retired from the MSP Post in Mt. Pleasant, Michigan.

13. After retirement Mr. Bland established A & J Auto Sales, a car repair and sales business in Mt. Pleasant Michigan.

14. Mr. Bland was known by one or more of the individual defendants before July 26, 2007.

15. Mr. Bland's son, Jonn Bland, had worked with Defendant Dush prior to Mr. Bland's retirement from the Michigan State Police.

16. On December 3, 2006, Mr. Bland suffered a stroke.

17. Mr. Bland was treated for his stroke by physicians at Central Michigan Community Hospital.

18. The stroke left Mr. Bland with receptive and expressive Aphasia which is a life-disabling condition caused by damage to the language centers of the brain.  Aphasia is often isolating and extremely frustrating.

19. The Aphasia seriously interfered with Mr. Bland's ability to communicate orally and to understand the oral communications of others.

20. Although Mr. Bland knows what he wants to say when he attempts to communicate, the Aphasia has caused Mr. Bland to struggle to find the words in order to express his thoughts.  It is quite common for people with Aphasia to mix related words when they speak.

21. The Aphasia has also made it difficult for Mr. Bland to understand what people say to him.

22. Following his stroke on December 3, 2006, Mr. Bland has significant difficulties in both expressing his thoughts orally and understanding the spoken words by others.

23. On February 2, 2007, Mr. Bland began speech and communication therapy three to five days per week at Central Michigan Community Hospital.

24. Mr. Bland was provided with a credit card sized laminated card by a therapist at the Central Michigan Community Hospital during his speech therapy that he was to keep on his person and physically present to others at the onset of an interpersonal conversation.

25. That card, which was always carried by Mr. Bland to show others prior to engaging in conversation, reads:

<u>Please Read Carefully</u>
I have had a brain injury/stroke.
I have Aphasia.
I have difficulty communicating.
My intellect is intact.
**Please speak clearly and slowly.**
**Write key words if I do not understand.**

26. The card requests that people who communicate with Mr. Bland do so clearly and slowly, and write down "key words," because the Aphasia has diminished Mr. Bland's ability to communicate effectively through speech alone.

27. Mr. Bland was instructed in speech therapy to hand this card to people who were trying to orally communicate with him.

28. On July 26, 2007, Mr. Bland's wife, Jean Bland ("Mrs. Bland"), severely cut her left leg on an opened door of a dishwasher while alone at home, and bled profusely from the wound.

29. On July 26, 2007, Mrs. Bland called her husband Alfred Bland at his place of employment and told Mr. Bland the she cut her leg and it was bleeding profusely.

30. On July 26, 2007, Mr. Bland immediately went home to tend to his wife after he received her telephone call informing him of her wound.

31. When Mr. Bland arrived at his home and saw the severity of his wife's leg wound, he quickly called emergency 9-1-1 to seek medical assistance.

32. On July 26, 2007, at approximately 1642 hrs., an ambulance was dispatched to the Bland residence as a result of Mr. Bland's 9-1-1 call for emergency assistance.

33. Prior to July 26, 2007, Mrs. Bland was prescribed 75 mg daily of Plavix - an anti-platelet or blood thinning medication by her physician.

34. Excessive bleeding is a recognized risk for people that use Plavix.

35. On July 26, 2007, Mrs. Bland took her Plavix medication as she had done previously on a daily basis.

36. Mrs. Bland was a small woman and weighed approximately 94 pounds, which exacerbated the effects of profuse bleeding.

37. At approximately 1702 hrs., on July 26, 2007, EMS paramedics arrived at the Bland residence to render medical assistance to Mrs. Bland.

38. By the time the EMS paramedics arrived, Mrs. Bland had lost between 1000-2000 ml (1-2 liters) of blood.

39. The EMS paramedics also found Mrs. Bland weak and her veins incapable of receiving an intravenous needle.

40. Mr. Bland was overwrought and panicked at seeing his wife bleeding profusely and was adamant that the EMS paramedics immediately take his wife to the hospital for treatment.

41. The communicative difficulties caused by Aphasia are greatly exacerbated when the person is tired, unwell or under pressure.

42. Mr. Bland's Aphasia significantly interfered with his ability to orally communicate with the EMS paramedics.

43. The EMS paramedics mistook Mr. Bland's Aphasia, his frustration about his communication difficulties, and his immediate fear about the severity of his wife's injury, as obstructive interference.

44. Just prior to leaving the Bland residence, EMS paramedics first "called for PD from Isabella Central," then called Central Michigan Community Hospital "and let them know of the situation of what was going on," while at the Bland residence.

45. Mr. Bland traveled separately to the hospital to be with his wife on July 26, 2007. When he arrived at the Hospital, Mr. Bland went to be with his wife in the emergency room.

46. After arriving at the emergency room, Mr. Bland was told to wait outside while medical personnel tended to his wife.

47. The emergency room physician who treated Mrs. Bland on July 26, 2009, diagnosed her as acutely anemic secondary to massive blood loss and admitted her to the hospital for a blood transfusion and rehydration.

48. Mrs. Bland received transfusions of two units of packed red blood cells and was hospitalized from July 26, 2007 to July 30, 2007.

49. Mr. Bland went to the hospital parking lot to sit in his truck while he waited for the emergency room physician to treat his wife.

50. Mr. Bland was by himself in his truck, was interfering with no one, and presented no danger.

51. While Mr. Bland was seated alone in his truck in the parking lot of the hospital, he was approached by Isabella County Sheriff's Deputy Dush.

52. Defendant Dush engaged and confronted Mr. Bland, and verbally demanded that Mr. Bland exit his truck and answer questions about the allegations made to police by the EMS paramedics.

53. Because of his stroke related Aphasia; Mr. Bland had difficulty in understanding and

communicating with Defendant Dush.

54. When Mr. Bland reached in his shirt pocket for his disability information card, Defendant Dush violently, without warning and without cause, struck the then 80 year old plaintiff and beat him with a hard, metallic object on his right thigh and right knee.

55. Defendants Dush, Hadley and Cuthbertson then forced Mr. Bland onto his abdomen, restrained him and handcuffed him.

56. After Mr. Bland was restrained, handcuffed and laid face down in the parking lot, he no longer presented as a threat to the defendant police officers, himself, or anyone around him. Despite that, Defendants Dush, Hadley and Cuthbertson rolled Mr. Bland onto his back and used a taser gun to tase Mr. Bland directly on his abdomen.

57. The "drive stunned" an exceedingly powerful electric current through his 80 year old body, causing Mr. Bland to lose control of his bowels and defecate in his pants.

58. Mr. Bland, while incapacitated by the intense effects of the taser, was delivered a second taser drive stun by Defendant Dush, which rendered the 80 year old Mr. Bland unconscious.

59. Mr. Bland was provided no medical attention following the two drive stun applications of the taser.

60. Mr. Bland was transported to the Isabella County Jail for booking.

61. Mr. Bland was photographed (mug shot) and fingerprinted at the Isabella County Jail.

62. Once he was "booked," Mr. Bland was placed in the Isabella County Jail lock-up at approximately 1730 hours on July 26, 2007.

63. Corrections officers at the jail laughed and ridiculed Mr. Bland when he asked for toilet paper to wipe and clean the feces from his clothes and his body.

64. Corrections officers at the jail laughed and ridiculed Mr. Bland when he asked to make a telephone call to his son to inform his son of his whereabouts and the whereabouts of Mrs. Bland.

65. Mr. Bland was denied both toilet paper and the use of the telephone, and was denied medical attention, on July 26 and July 27, 2007. Instead, Mr. Bland was purposefully and intentionally forced to remain incommunicado and to sit with his underwear filled with feces for those two (2) days.

66. Sometime after noon on July 27, 2007, former Michigan State Police Officer Detective/Sergeant Mr. Bland was arraigned by video before a magistrate judge, with his pants still filled with feces, the stench of which permeated the room.

67. Following his release, Mr. Bland's son took Mr. Bland to be evaluated by Mr. Bland's physician, who concluded and stated in a letter to the prosecuting attorney that Mr. Bland was subjected to an excessive beating, and the use of the taser on 80 year old Mr. Bland could have caused his death.

## COUNT I

## 42 U.S.C. §1983 AS AGAINST THE INDIVIDUAL DEFENDANTS FOR EXCESSIVE FORCE

68. The allegations set forth above in paragraphs 1-71 are incorporated herein by reference as though fully set forth herein at length.

69. The use of excessive or unreasonable force by these individual defendants to subdue the Plaintiff gives rise to a 42 USC §1983 cause of action.

70. Excessive force claims are to be analyzed under the 4th Amendment's reasonableness standard rather than under the due process clause of the 14th Amendment.

71. The reasonableness inquiry in an excessive force case is an objective one that should disregard the underlying intent or motivation of these Defendants.

72. The reasonableness of the force used to affect a particular seizure is determined by a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interest at stake."

73. The force which is applied must be balanced against the government's need to use the amount of force used against the particular Plaintiff.

74. As a matter of personal liberty, the right to be free from excessive force is a clearly established constitutional right.

75. This liberty-based right to be free from excessive governmental force includes the right not to be beaten and tasered because of a failure to follow police directives, the result of an Aphasia condition secondary to a stroke.

76. By definition, the diminished capacity of an unarmed detainee must be taken into account when assessing the amount of force exerted by the governmental authorities.

77. Any reasonable police officer knew, or should have known, that the conduct and actions against Mr. Bland would and did constitute excessive force.

78. The malicious beating and use of a taser on not one (1), but two (2) occasions, against a handcuffed, elderly 80 year old gentleman is imposed only to cause harm to the gentleman, and constitutes excessive use of force.

79. The malicious beating and use of a taser on two (2) occasions against a handcuffed, elderly 80 year old gentleman is malicious and sadistic, and shocks the conscience.

80. Moreover, a supervisor has a constitutionally cognizable duty to intervene and to stop the unconstitutional misconduct of a subordinate of which they are aware, especially where they are actually present and witnessing it.

81. If, as here, a supervisor with authority over a subordinate directly participates in the constitutional violation, and is aware that the subordinate is violating someone's constitutional rights, yet fails to act to stop the subordinate from engaging in the constitutional violation, the fact-finder may

properly infer that the supervisor has acquiesced in the subordinate's constitutional misconduct, and may themselves be found liable under 42 U.S.C. §1983.

82. As a direct and proximate result of the individual defendants' use of excessive force, the Plaintiff, Alfred T. Bland, has suffered severe damages including:

    a) Pain and suffering;
    b) Mental anguish;
    c) Emotional distress;
    d) Embarrassment;
    e) Humiliation;
    f) Shock and disbelief;
    g) Loss of ability to lead his normal life;
    h) Loss of consortium;
    i) Punitive damages;
    j) Actual Damages; and
    k) Reasonable attorney fees.

**WHEREFORE,** the Plaintiff, Alfred Bland, prays that this Honorable Court enter judgment against the individual defendants in whatever amount above $75,000.00 is awarded by the finder-of-fact, together with such other and further relief as to this Court may seem just and proper.

## COUNT II

## ASSAULT AND BATTERY AS AGAINST THE INDIVIDUAL DEFENDANTS

83. The allegations set forth above in paragraphs 1-86 are incorporated herein by reference as though fully set forth herein at length.

84. Governmental immunity does not apply to intentional torts committed by individual governmental employees.

85. A governmental employee's commission of an intentional tort is not in the exercise or discharge of a governmental function.

86. An intentional tort is not an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter, ordinance, or other law as required by the express terms of MCL 691.1401(t).

87. A governmental employee who commits an intentional tort is not shielded by governmental immunity under MCL 691.1407(2).

88. The governmental employees' intentional use or misuse of his or her badge of governmental authority for a purpose unauthorized by law is not the exercise of a governmental function, and is not protected by governmental immunity.

89. The defendants are subject to liability under the intentional tort exception to state governmental immunity.

90. Assault and battery are intentional torts under state law.

91. An assault is any intentional, unlawful threat or offer to do bodily injury to another by force, under circumstances which create a well-founded fear of imminent peril coupled with the apparent present ability to carry out the act if not prevented.

92. A battery is the unlawful, willful or intentional touching of a person against that person's will.

93. A state actor who uses more force than is reasonably necessary to affect a lawful seizure commits battery upon the person seized to the extent the force used was excessive.

94. In this respect, the Plaintiff's assault and battery claim comprises substantially the same proofs submitted supporting the Plaintiff's 42 U.S.C. § 1983 claim for excessive use of force including, but not limited to, the fact that the defendants pulled Mr. Bland from his truck, threw him to the ground and handcuffed him, then maliciously and sadistically tasered him on not one, but two occasions. Once he lay helpless on the ground, soiled in his own feces, defendants took him to the police precinct, booked him, and left him in his feces, refusing him his telephone call to his son or

lawyer, refusing him reasonable and necessary medical treatment, and refusing his request to clean himself.

95. As a direct and proximate result of the individual defendants' assault and battery, Plaintiff, Alfred Bland has suffered severe damages, including:

   a) Pain and suffering;
   b) Mental anguish;
   c) Emotional distress;
   d) Embarrassment;
   e) Humiliation;
   f) Shock and disbelief;
   g) Loss of ability to lead his normal life;
   h) Loss of consortium;
   i) Punitive damages;
   j) Reasonable attorney fees; and
   k) Actual damages.

**WHEREFORE,** the Plaintiff, Alfred Bland, prays that this Honorable Court enter judgment against the individual defendants in a sum greater than $75,000.00, as awarded by the finder-of-fact, together with such other and further relief as this Honorable Court deems just and proper.

## COUNT III

### GROSS NEGLIGENCE AS AGAINST THE INDIVIDUAL DEFENDANTS

96. The allegations set forth above in paragraphs 1-99 are incorporated herein by reference as though fully set forth herein at length.

97. As stated above, governmental immunity does not apply to intentional torts committed by individual governmental employees.

98. A governmental employee's commission of an intentional tort is not in the exercise or discharge of a governmental function.

99. An intentional tort is not an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter, ordinance, or other law as required by the express terms of MCL 691.1401(t).

100. A governmental employee who commits an intentional tort is not, therefore, shielded by governmental immunity under MCL 691.1407(2).

101. The governmental employees' intentional use or misuse of his or her badge of governmental authority for a purpose unauthorized by law is not the exercise of a governmental function, and is not, therefore, protected by governmental immunity.

102. Gross negligence is defined in MCLA 691.1407(2)(c) as conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

103. In this respect, the Plaintiff's claim of gross negligence comprises substantially the same proofs submitted supporting the Plaintiff's 42 U.S.C. § 1983 claim for excessive use of force in that defendants acted in reckless disregard for Mr. Bland's civil rights. The facts supporting the claim of gross negligence include, but are not limited to, the fact that the defendants threw Mr. Bland to the ground and handcuffed him, then maliciously and sadistically tasered him on not one, but two occasions. Once he lay helpless on the ground, soiled in his own feces, defendants took him to the police precinct, booked him, and left him in his feces, refusing him his telephone call to his son or lawyer, refusing him reasonable and necessary medical treatment, and refusing his request to clean himself.

104. As a direct and proximate result of the individual defendants' gross negligence, Plaintiff Alfred T. Bland has suffered severe damages, including:

       a) Pain and suffering;
       b) Mental anguish;
       c) Emotional distress;
       d) Embarrassment;

  e) Humiliation;
  f) Shock and disbelief;
  g) Loss of ability to lead his normal life;
  h) Loss of consortium;
  i) Punitive damages;
  j) Actual Damages; and
  k) Reasonable attorney fees.

**WHEREFORE,** the Plaintiff, Alfred Bland, prays that this Honorable Court enter judgment against the individual defendants in a sum greater than $75,000.00, as awarded by the finder-of-fact, together with such other and further relief as this Honorable Court deems just and proper.

## COUNT IV

### 42 U.S.C. §1983 AS AGAINST ISABELLA COUNTY AND ISABELLA COUNTY SHERIFF'S DEPARTMENT

105. The allegations set forth above in paragraphs 1-108 are incorporated herein by reference as though fully set forth herein at length.

106. These defendants are responsible for the development, adoption and implementation of the policies, procedures and operation of the Isabella County Jail.

107. These defendants have willfully and deliberately failed to adopt, implement or systematically enforce policies, procedures and/or operations at the Isabella County Jail necessary to safeguard the constitutional rights of all pre-trial detainees including the plaintiff.

108. These defendants have willfully and deliberately failed to adopt, implement or systematically enforce policies, procedures and/or operations necessary to safeguard the constitutional rights of all arrestees or pre-trial detainees with disabilities, including mental disabilities, as plaintiff herein.

109. These defendants knew that its correctional staff was intentionally, willfully or deliberately ignoring the requests of pre-trial detainees for care and services guaranteed to them by the 4th and 14th Amendments of the US Constitution, including requests to use a telephone to notify relatives of the arrest and/or to contact a lawyer, and the need for medical care where warranted.

110. Despite knowledge of the willful and deliberate refusal by its correctional staff to provide the constitutionally mandated care or services to pre-trial detainees, these defendants did nothing to protect the plaintiff's constitutional rights to toilet tissue and a telephone call while he was in jail on July 26, 2007 to July 27, 2007, and willfully and deliberately refused him medical care.

111. As a direct and proximate result of these defendants' breach of their constitutional duty of due care, the plaintiff suffered severe damages including:

      a) Pain and suffering;
      b) Mental anguish;
      c) Emotional distress;
      d) Embarrassment;
      e) Humiliation;
      f) Shock and disbelief;
      g) Loss of ability to lead his normal life;
      h) Loss of consortium;
      i) Punitive damages;
      j) Actual Damages; and
      k) Reasonable attorney fees.

**WHEREFORE,** the Plaintiff, Alfred Bland, prays that this court would enter judgment against the individual defendants in whatever amount above $75,000.00 is awarded by the finder-of-fact; together with such other and further relief as to this Court may seem just and proper.

Respectfully submitted,

By: _____
RICHARD G. CONVERTINO (P62829)
Attorney for Plaintiff, Alfred T. Bland
*CONVERTINO & ASSOCIATE*
The Mayflower Centre
801 W. Ann Arbor Trail, Ste. 233
Plymouth, MI  48170
(734) 927-9900
rgc@convertino.net

Dated: March 15, 2010

## JURY DEMAND

**NOW COMES** the Plaintiff, ALFRED T. BLAND, by and through his attorneys, CONVERTINO & ASSOCIATES, and hereby demands a trial by jury in the aforementioned cause of action against the defendants Isabella County Sheriff's Department, Isabella County Deputy Sheriff Kevin E. Dush, individually and in his individual capacity, Isabella County Deputy Sheriff Sgt. James Hadley, individually and in his individual capacity, and City of Mount Pleasant Police officer Sara Cuthbertson, individually and in her individual capacity.

Respectfully submitted,

By: _____
RICHARD G. CONVERTINO (P62829)
Attorneys for Plaintiff, Alfred T. Bland
*CONVERTINO & ASSOCIATES*
The Mayflower Centre
801 W. Ann Arbor Trail, Ste. 233
Plymouth, MI  48170
(734) 927-9900
rgc@convertino.net

Dated:  March 15, 2010