UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALFRED T. BLAND,

        Plaintiff,

                                 Case Number: 10-11046-BC
v.                                   Honorable Thomas L. Ludington

KEVIN E. DUSH, SGT. JAMES HADLEY,
COUNTY OF ISABELLA, ISABELLA
COUNTY SHERIFF'S DEPARTMENT,
and SARA CUTHBERTSON,

        Defendants.

_____/

## OPINION AND ORDER DENYING DEFENDANT CUTHBERTSON'S MOTION FOR SUMMARY JUDGMENT AND CANCELING HEARING

Defendant Sara Cuthbertson filed a motion for summary judgment on December 15, 2010, contending that she is entitled to qualified immunity from Plaintiff's constitutional claim and Michigan governmental immunity from Plaintiff's assault and battery claim. She further contends that Plaintiff's gross negligence claim should be dismissed. For the reasons explained below, Officer Cuthbertson's motion will be denied.

## I

Plaintiff Alfred T. Bland summoned an ambulance to his home in Mt. Pleasant, Michigan on July 26, 2007, to assist his wife, Jean Bland, who had cut her leg and was bleeding profusely. When two paramedics arrived, twenty minutes later according to Plaintiff's complaint, they found Mr. Bland agitated and anxious for his wife to be transported to the hospital. Mrs. Bland had already lost a substantial amount of blood, and Mr. Bland was particularly concerned because of her small stature—she weighed ninety-four pounds—and her use of the anti-platelet prescription drug Plavix. At one point, when Mr. Bland believed the paramedics were moving too slowly, he picked

up his wife in an attempt to carry her to the ambulance himself.  The paramedics intervened and transported Mrs. Bland to the ambulance, but they left their medical equipment in the home.  Mr. Bland followed them out, locked the door, and refused to readmit them to the home.  Mr. Bland did not understand why they wanted to return to the home, and was concerned that his dog would get out.

Mr. Bland then drove to Central Michigan Community Hospital separately, arriving before the ambulance.  Mr. Bland believed the paramedics chose a poor route to the hospital.  While in route, the paramedics called the Isabella County dispatcher and requested assistance from police officers, apparently because they were concerned about further confrontations with Mr. Bland.

Mr. Bland was eighty-years old at the time.  He recently suffered a stroke, and he was dealing with aphasia and hearing loss, which significantly limited his ability to understand spoken language.  He was five feet eight inches tall, and weighed 165 pounds.  He was a local business owner, and a retired Michigan State Police Officer.

After Mrs. Bland was admitted to the hospital and the doctors had commenced treatment, the doctors asked Mr. Bland to leave the room to provide more space.  Mr. Bland then left to find something to eat.  Mr. Bland was entering his truck in the parking lot when he was approached by Defendant Kevin E. Dush, an Isabella County Sheriff's Deputy.  Mr. Bland recognized Deputy Dush as a former co-worker of his son's, and asked him: "[W]hat's the problem?"  Pl.'s Dep. at 62.  Deputy Dush responded: "[Y]ou have a big problem. . . . [Y]ou assaulted those two guys."  *Id.*  Mr. Bland gestured and indicated that Deputy Dush should "go get those guys" so that they could discuss the incident.  *Id.*  He then turned back toward his truck to look for a card that explains his communication problems, when, in Mr. Blands words, "wham, smack down."  *Id.* at 63.  Deputy

-2-

Dush hit Mr. Bland on his right leg between his hip and his knee with a metal object, possibly a baton or handcuffs, and he was knocked to the ground. *Id.* at 63–65.

Mr. Bland struggled to get back up, grabbing Deputy Dush's leg, but he was pushed back to the ground, kicked or beaten, and handcuffed. *Id.* at 69. At some point, two additional officers approached, a sergeant in the Sheriff's Department, Deputy James Hadley, and City of Mt. Pleasant Police Officer Sara Cuthbertson. Mr. Bland was unable to observe the extent to which the other officer's participated in kicking or punching him while he was on the ground. *Id.* at 69–70, 90. The officers then handcuffed Mr. Bland, rolled him to his back. Deputy Dush then fired a Taser into his abdomen. *Id.* at 70–72. The first jolt from the Taser caused him to lose control of his bowels, the second jolt rendered him unconscious. *Id.*

Mr. Bland regained consciousness in Deputy Dush's patrol car in route to the Isabella County Jail. He was charged with several counts of assault and two counts of resisting and obstructing a police officer. [Dkt. # 23-6, 23-7]. Mr. Bland was released from jail the next day and the charges were later dropped by the Isabella County Prosecutor after he received a letter from Mr. Bland's doctor, explaining Mr. Bland's communication difficulties and lamenting the "very aggressive [and] actually unnecessary treatment" he received. [Dkt. # 23-2].

On March 16, 2010, Mr. Bland filed a four-count complaint against Isabella County, the Isabella County Sheriff's Department, Deputy Dush, Deputy Hadley, and Officer Cuthbertson. Mr. Bland asserts that the individual defendants used excessive force to secure his arrest in violation of the Fourth Amendment and 42 U.S.C. § 1983, assault and battery, gross negligence, and a *Monell* claim against the City and the Sheriff's Department. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Following discovery, Officer Cuthbertson filed a motion for summary judgment on

-3-

December 15, 2010.  The other Defendants did not file a dispositive motion.  Officer Cuthbertson contends that she is entitled to qualified immunity against Mr. Bland's constitutional claims, that she is entitled to governmental immunity as to Mr. Bland's intentional tort claims, and that the gross negligence claim should be dismissed because it is an attempt to circumvent Michigan's governmental immunity statute.

## II

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for relevant facts "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted).  If the opposing party does not raise genuine issues of fact and the record indicates the moving party is entitled to judgment as a matter of law, the court shall grant summary judgment. *Anderson*, 477 U.S. at 250.

The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.  The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d

1472, 1479 (6th Cir. 1989).  A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.

III

Generally, summary judgment based on qualified immunity is proper if the law did not put the officer on notice that her conduct would be clearly unlawful.  *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002).  However, if a genuine issue of material fact exist as to whether the officer committed acts that would violate a clearly established right, then summary judgment is improper. *Poe v. Haydon*, 853 F.2d 418, 425–26 (6th Cir. 1988).

Importantly, it is the duty of the jury and not the Court to determine which version of the events to credit.  At this stage of the case, the Court is obligated to view the facts in the light most favorable to Mr. Bland, which means his version of the events must be accepted as true.  Still, it is worth emphasizing that Officer Cuthbertson's version of what happened in the hospital parking lot is rather different from Plaintiff's explanation of the events.  Officer Cuthbertson contends that when she encountered Deputy Dush struggling with Mr. Bland, Mr. Bland had the deputy in a headlock. [Dkt. # 23-5].  She entered the struggle and attempted to get hold of Mr. Bland's arm while Deputy Hadley attempted to get hold of the other arm.  The trio of police officers then attempted to restrain Mr. Bland and push him to the ground, but when they were unable to do so, Deputy Dush fired the Taser.  After Mr. Bland was Tased, the officers where able to restrain him, handcuff him, and place him in the patrol car.

Officer Cuthbertson submitted an affidavit affirming under oath that she was at the hospital that day to investigate a reported assault on the paramedics at the Bland home.  [Dkt. # 21-4].

-5-

Officer Cuthbertson asserts that she did not have a Taser, did not use a Taser against Mr. Bland, and did not even know a Taser would be used until moments before it happened. Officer Cuthbertson further asserts that she never struck Mr. Bland with her hands, her feet, or any object.

If Officer Cuthbertson's explanation of the events were the only one before the Court, she would be entitled to qualified immunity. Indeed, all of Plaintiff's claims would necessarily be dismissed. But at this stage of the case, the Court must view the facts in the light most favorable to Plaintiff. Therefore, the question is whether she is still entitled to qualified immunity if, as Plaintiff contends, she was present and observed an eighty-year-old man kicked and beaten by a police officer as he lay on the ground handcuffed, and then stood by without making any effort to intervene as a fellow officer, albeit from a different agency, stunned Mr. Bland with a Taser.

"Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Qualified immunity is immunity from suit, not merely a defense to liability. *See id.* at 200–01 (emphasis in original). "Qualified immunity provides 'that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once raised, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2001) (citation omitted).

At the summary judgment phase, whether a defendant is entitled to qualified immunity depends on a two-step inquiry: first, whether the violation of a constitutional right has occurred, and

second, whether the right at issue "was clearly established at the time of defendant's alleged misconduct." *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009) (citations and quotation marks omitted); *see also Pearson v. Callahan*, 555 U.S. 223, (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citations omitted); *see also Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993) ("In determining whether a constitutional right is clearly established, the court must first look to decisions of the U.S. Supreme Court, then to decisions of the Sixth Circuit, and, finally to decisions of other circuits."). "This standard requires the courts to examine the asserted right at a relatively high level of specificity," and "on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendant['s] position could have believed that his conduct was lawful." *Cope v. Heltsley*, 128 F.3d 452, 458-59 (6th Cir. 1997) (quotations marks and citation omitted, alteration in original).

Generally, there are two ways in which a plaintiff may show that "officers were on notice that they were violating a 'clearly established' constitutional right." *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005). First, "where the violation was sufficiently 'obvious' under the general standards of constitutional care . . . the plaintiff need not show 'a body' of 'materially similar' case

law." *Id.* (quoting *Brousseau v. Haugen*, 543 U.S. 194, 199 (2004)).  Second, the violation may be shown "by the failure to adhere to a 'particularized' body of precedent that 'squarely govern[s] the case." *Id.* (quoting *Brousseau*, 543 U.S. at 201).

At least with respect to Deputy Dush, Plaintiff has presented sufficient evidence for a reasonable jury to conclude that a clearly established constitutional right was violated.  "[T]he right to be free from excessive force is a clearly established Fourth Amendment right." *Champion*, 380 F.3d at 902.  Moreover, repeatedly kicking and beating a handcuffed octogenarian who is not resisting arrest and then shooting the suspect, who is still handcuffed and compliant, twice with a Taser, is an objectively unreasonable use of force. *See Graham v. Connor*, 490 U.S. 386, 397 (1989) (describing the Fourth Amendment's test for excessive force claims as "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation").  The Sixth Circuit has repeatedly held that beating and using a Taser on a compliant suspect violates the Fourth Amendment. *See, e.g.*, *Kijowski v. City of Niles*, 372 F. App'x 595, 599–600 (6th Cir. 2010) (deploying Taser on suspect who was not resisting is objectively unreasonable); *Grawey v. Drury*, 567 F.3d 302, 311 (6th Cir. 2009) (concluding use of pepper spray on compliant suspect who has not been told he is under arrest and is not handcuffed is objectively unreasonable); *Shreve v. Jessamine Cnty. Fiscal Ct.*, 453 F.3d 681, 688 (6th Cir. 2006) (concluding right "not to be struck and jumped on gratuitously" is clearly established); *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) (concluding that "gratuitous blows" with a nightstick are objectively unreasonable where suspect was handcuffed and not trying to escape or hurt anyone).  It may well be that a jury ultimately determines that the force used by the officers in this case was justified, but when the facts are viewed in the light most favorable to

-8-

Plaintiff, his clearly established right to be free from excessive force was violated when the officers struck repeated blows while he was on the ground and then deployed a Taser against him after he was already handcuffed.

Officer Cuthbertson contends, however, that even when the evidence is viewed in the light most favorable to Plaintiff, the evidence does not demonstrate that *she* violated the Fourth Amendment by using excessive force. *Champion*, 380 F.3d at 901. She emphasizes that excessive force claims are fact specific and depend on the particular actions of each individual defendant: Officer Cuthbertson did not fire the Taser, she did not kick or beat Plaintiff, and she did not hit Plaintiff with a metal object. Indeed, there is no evidence that Officer Cuthbertson ever struck Plaintiff at all. Plaintiff testified that the officers "beat[] the hell out of me . . . with their feets [sic] or smacked something," but he did not know who beat him because he could not see it occur. Pl.'s Dep at 90. He further testified that the visible bruising was caused by Deputy Dush, and not Officer Cuthbertson, and that Deputy Dush deployed the Taser. *Id.* at 95. While Officer Cuthbertson may have participated in the alleged beating, Plaintiff could not testify to that fact.

Plaintiff implicitly acknowledges the potential deficiency in his claims against Officer Cuthbertson, but presents an alternative theory of liability. Even though there is no evidence Officer Cuthbertson actually used excessive force, she may still be liable if she "observed or had reason to know that excessive force would be or was being used, and had both the opportunity and the means to prevent the harm from occurring." *Landis v. Baker*, 297 F. App'x 453, 463 (6th Cir. 2008) (citing *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)); *see also Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982) ("[I]t is not necessary, in order to hold a police officer liable under § 1983, to demonstrate that the officer actively participated in striking a Plaintiff."). A police officer who

declines to intervene where the law imposes a duty to intervene may be liable for her inaction. *Bruner*, 684 F.2d at 426 (officer who failed to intervene in a beating administrated by fellow officer may be liable).

In *Landis*, the plaintiff was the estate of a man who was killed in a confrontation with state police officers and sheriff's deputies in Livingston County. The plaintiff's decedent, Charles Keiser, was suspected of moving construction equipment onto U.S. Highway 23, blocking two lanes of traffic, and forcing the police to close the highway. *Landis*, 297 F. App'x at 455. When police attempted to arrest Keiser, he resisted. *Id.* at 455–56. Keiser choked one officer and only released his grip after the officer pepper sprayed him. *Id.* Keiser then walked into a nearby swamp and stood motionless with his hands at his sides in ten inches of water. *Id.* at 456–57. Keiser refused to leave the swamp, so the officers deployed a Taser. *Id.* The Taser did not work, however, because Keiser was wearing a heavy coat. *Id.* The officers then approached Keiser and one of them hit him across the back of his legs ten times with a baton, while a different officer deployed a Taser in "stun mode" four or five times. *Id.* Kaiser was pushed onto his stomach in a "push-up position" with his head underwater. *Id.* When he was removed from the swamp, he was no longer breathing. An autopsy revealed thick mud, water, and other debris in his airway. *Id.*

Although there were at least four officers involved in the arrest, only one officer used a Taser and only one officer struck Plaintiff with a baton. Still, in an October 2008 opinion concluding that none of the officers involved in Keiser's arrest were entitled to qualified immunity, the Sixth Circuit emphasized that all of the officers were potentially liable for the excessive uses of force because they had "the means and opportunity to prevent the harm to Keiser." *Id.* at 464. Plaintiff contends that like the other officers involved in arresting Keiser, Officer Cuthbertson is potentially liable for

-10-

the beating he received while he was on the ground and the use of the Taser by Dush after he was handcuffed.[1]

Officer Cuthbertson contends that this case is distinguishable from *Landis* because she had neither the opportunity nor the means to prevent Deputy Dush from harming Plaintiff. Officer Cuthbertson contends that *Turner*, a case where the Sixth Circuit granted qualified immunity to an officer who was present during the alleged use of force but did administer it, more closely resembles the facts of this case. In *Turner*, plaintiff Eva Turner had been arrested for stealing a pickup truck by the defendant, Officer Scott. *Turner*, 119 F.3d at 426–27. After Scott questioned Turner and three members of her family, the four suspects were seated on chairs in the "squad room" facing a counter. *Id.* Officer Scott was seated at the counter with his back to Turner, completing paperwork. *Id.* A second officer, Daly, entered the squad room and also approached the counter with a shotgun in his hand. Daly began rummaging through a bag on the counter. *Id.* With his back to Turner, Daly bumped Turner in the head with the butt end of the shotgun, apparently accidentally. *Id.* Turner then leaned forward in the chair as if to move and was struck again in the head with the shotgun, although much harder. *Id.* Both Scott and Daly had their backs to Turner throughout the episode. *Id.* Turner sued, contending Officer Scott was liable under § 1983 for Officer Daly's conduct.

The Sixth Circuit noted that an officer may be liable for failing to act to prevent the use of excessive force when "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm

---

[1] Plaintiff contends a third use of force was also excessive—the initial blow administered by Dush with a metal object. Cutherbertson was not yet on the scene when the initial blow was administered, as a result, she cannot be liable for the first use of force.

-11-

from occurring." *Id.* at 429 (citing *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).  It concluded, however, that Scott was entitled to qualified immunity because the record was "devoid of any suggestion that Officer Scott actually observed or should have know of Daly's actions." *Turner*, 119 F.3d at 429.  There was no communication between the officers prior to the blows and Scott was at the counter completing paperwork with his back turned throughout the entire episode. *Id.*

The circumstances of this case more closely resemble *Landis* than *Turner*.  Plaintiff has established a prima facie case that Officer Cutherbertson violated his Fourth Amendment right to be free from excessive force, even if she never struck a blow, because she did not act to stop the actions of Deputy Dush even though she was present and observed his actions and had both the opportunity and means to prevent them.

Officer Cutherbertson approached Deputy Dush and Mr. Bland after Deputy Dush had struck the initial blow and Mr. Bland was on the ground.  Thereafter, the three officers delivered a series of gratuitous blows with their feet or hands to Mr. Bland.  Viewing the facts in the light most favorable to Plaintiff, these blows were objectively unreasonable given Mr. Bland's age and size and the fact that he was not resisting and had already been forced to the ground.  Even if Officer Cutherbertson did not deliver the blows, she was in the position to observe them and intervene, yet she chose not to do so.  Thereafter, Mr. Bland was handcuffed and Deputy Dush indicated his intention to use the Taser.  Rather than intervene, as she was constitutionally required to do, she released her hold of Mr. Bland, apparently to get out of Deputy Dush's way. [Dkt. # 23-5].  Officer Cutherbertson did not intervene to stop an excessive use of force even though she was close enough to touch Mr. Bland and was aware that Deputy Dush intended to use his Taser.  Plaintiff has

-12-

established a prima facie violation of his Fourth Amendment rights by Officer Cuthbertson.

Moreover, Officer Cutherbertson's duty to intervene was clearly established at the time of the events giving rise to this case.  Although *Landis* was decided after Mr. Bland's arrest, *Turner* was decided in 1997, a decade before the arrest.  119 F.3d 425.  The *Turner* court clearly established that a police officer who observes a fellow officer using excessive force has a constitutional duty to intervene if she has the means and opportunity to do so.  *Id.* at 429.  A reasonable officer in Cutherberson's situation would have known that she was required to intervene.  Accordingly, Officer Cuthbertson is not entitled to qualified immunity.

## IV

Officer Cuthbertson contends she is entitled to governmental immunity from Plaintiff's assault and battery claim.  *See* Michigan Governmental Tort Liability Act, Mich. Comp. Laws § 691.1407(2); *Odom v. Wayne Cnty.*, 760 N.W.2d 217 (2008).  Under Michigan law, a police officer is entitled to governmental immunity for her intentional torts if the officer can establish that she "was acting in the course of [her] employment and at least reasonably believed that [s]he was acting within the scope of [her] authority, that [her] actions were discretionary in nature, and that [s]he acted in good faith."  *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254 (6th Cir. 2010).  "Good faith" means "without malice."  *Id.*

A reasonable jury could conclude that Officer Cuthbertson participated in the beating and Tasing of an eighty-year-old man who did not pose a threat to the officers.  In such a circumstance, she could not have reasonably believed she was acting in good faith.  *See VanVorous v. Burnmeister*, 687 N.W.2d 132, 142 (Mich. Ct. App. 2004) (suggesting that a police officer can be liable for intentional torts under Michigan law if her conduct is "objectively unreasonable" under the Fourth

-13-

Amendment standard); *see also Miller*, 606 F.3d at 254 (noting that the objectively unreasonable standard applied in an excessive force case is analogous to the good faith standard applied under Michigan law). Accordingly, a material issue of fact requires a jury to consider the assault and battery claims against Officer Cuthbertson.

Officer Cuthbertson next contends that Plaintiff's gross negligence claim should be dismissed because it is an attempt to avoid the governmental immunity statute by "dress[ing] up" an intentional tort claim as gross negligence claim. Indeed, such a strategy has been repeatedly rejected by the Michigan state courts, *see, e.g.*, *VanVorous*, 687 N.W.2d at 143, the Sixth Circuit, *see, e.g.*, *Miller*, 606 F.3d at 254, and this Court, *see, e.g.*, *Scozzari v. City of Clare*, 723 F. Supp. 2d 945, 967–68 (E.D. Mich. 2010).

This particular circumstance, however, presents a slightly different factual situation than courts encounter in most excessive force cases. Although not raised by the parties, Officer Cuthbertson has a reasonable defense to the assault and battery claim given the lack of evidence that she ever struck Plaintiff. In such a situation, it may have been grossly negligent to stand by and allow Mr. Bland to be struck and Tased without acting. Thus, the gross negligence claim will be permitted to go to the jury given the unique facts of this case. It is not a situation where the Plaintiff has attempted to "dress up" an intentional tort claim as a gross negligence claim.

## V

Accordingly, it is **ORDERED** that Defendant Cuthbertson' motion for summary judgment [Dkt. # 21] is **DENIED**.

It is further **ORDERED** that the hearing scheduled for February 24, 2011 was **CANCELED** based on the Court's the determination that the parties papers presented the necessary information

to resolve the motion and the hearing was unnecessary.  *See* E.D. Mich. L.R. 7.1(f)(2).

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: March 4, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 4, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS